UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| ALBERT QUEBEDEAUX | CIVIL ACTION NO. 6:21-cv-04337 |
| VERSUS | JUDGE JOSEPH |
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, ET AL. | MAGISTRATE JUDGE HANNA |

## **REPORT AND RECOMMENDATION**

Currently pending are the plaintiff's motion to remand (Rec. Doc. 8) and defendant Cory Pekarek's motion to dismiss for insufficient service (Rec. Doc. 11). The motions are opposed. The motions were referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. For the reasons fully explained below, this Court finds that the court lacks subject-matter jurisdiction, recommends that this matter should be remanded to state court, and further recommends that the pending motions should be denied as moot.

## **Background**

Albert Quebedeaux filed a petition in Louisiana state court, alleging that he was injured in a motor vehicle accident. He alleged that a vehicle driven by defendant Cory Pekarek rear-ended his vehicle, resulting in personal injuries. He further alleged that, at the time of the accident, Mr. Pekarek was employed by defendant Bear Creek Contracting, Inc. and driving a vehicle owned by Bear Creek.

He expressly alleged that Bear Creek was vicariously liable for Mr. Pekarek's negligence in causing the accident. Mr. Quebedeaux also sued The Travelers Indemnity Company of America, alleging that it insured Bear Creek, and he sued Progressive Security Insurance Company, his own uninsured/underinsured motorist ("UM") insurer.

Bear Creek and Travelers removed the suit, arguing that the court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are diverse in citizenship. Although the removing defendants alleged that Progressive was not diverse in citizenship from the plaintiff, they argued that Progressive's citizenship should not be considered because Progressive was improperly joined. The removing defendants further alleged that Mr. Pekarek had not been served at the time of removal, but had consented to removal of the suit to federal court.

Mr. Quebedeaux filed a motion to remand (Rec. Doc. 8), arguing that Mr. Pekarek was served before the case was removed and failed to properly consent to the removal, violating the rule of unanimity codified at 28 U.S.C. § 1446(b)(2)(A). Mr. Pekarek filed a motion to dismiss (Rec. Doc. 11), alleging that he was not properly served prior to removal.[1]

---

[1] Mr. Pekarek later admitted that this motion is moot. (Rec. Doc. 17 at 1).

This Court undertook a *sua sponte* review of subject-matter jurisdiction, but was unable to determine whether the requirements for subject-matter jurisdiction under Section 1332 were satisfied. Therefore, this Court ordered the removing defendants to brief that issue, advising that the issues of improper joinder and compliance with procedural rules would be taken up, if necessary, after the requirements for subject-matter jurisdiction were addressed. (Rec. Doc. 19). The removing defendants responded to the briefing order. (Rec. Doc. 21). Although afforded an opportunity to respond to the removing defendants' submission, the plaintiff did not file a responsive brief.

## Law and Analysis

"Federal courts are courts of limited jurisdiction. Absent jurisdiction conferred by statute, district courts lack power to consider claims."[2] Federal courts have subject-matter jurisdiction only over civil actions presenting a federal question[3] and those in which the amount in controversy exceeds $75,000 exclusive of interest and costs and the parties are citizens of different states.[4] A suit is presumed to lie beyond the scope of federal-court jurisdiction until the party invoking federal-court

---

[2] *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). See, also, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[3] 28 U.S.C. § 1331.

[4] 28 U.S.C. § 1332.

jurisdiction establishes otherwise.[5]  Similarly, any doubts regarding whether removal jurisdiction is proper should be resolved against federal-court jurisdiction.[6] The party invoking the court's subject-matter jurisdiction has the burden of establishing the court's jurisdiction.[7]  Thus, when a lawsuit has been removed from state court, as this suit has, the removing party must bear that burden.[8]  Accordingly, Bear Creek and Travelers have the burden of establishing that this court has subject-matter jurisdiction over this action.  Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[9]

### A.   Diversity of Citizenship and the Amount in Controversy

In their removal notice, the removing defendants alleged that the court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and the citizenship of the plaintiff is diverse from that of all of the defendants when Progressive's citizenship is disregarded.  In response to this Court's briefing order, the removing

---

[5]   *Kokkonen v. Guardian Life*, 511 U.S. at 377; *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

[6]   *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

[7]   *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Gaitor v. Peninsular & Occidental S. S. Co.*, 287 F.2d 252, 253 (5th Cir. 1961).

[8]   *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).

[9]   28 U.S.C. § 1447(c).

defendants presented evidence establishing that the nature of the injuries Mr. Quebedeaux sustained and the amount of medical expenses he incurred support a finding that the amount in controversy exceeds $75,000. More particularly, they established that Mr. Quebedeaux underwent cervical spine surgery, is contemplating shoulder surgery, may require lumbar surgery in the future, has incurred over $50,000 in medical bills, and is continuing to receive medical treatment.[10]

The removing defendants also submitted evidence showing that all of the defendants are diverse in citizenship from the plaintiff, who is a Louisiana citizen, except for Progressive, which is also a Louisiana citizen.[11] Therefore, the court has subject-matter jurisdiction only if Progressive's citizenship can be ignored because it was improperly joined.

**B.**     **Improper Joinder**

The removing defendants argued that Progressive's citizenship does not destroy the court's subject-matter jurisdiction because Progressive was improperly joined as a defendant in this lawsuit. In support of that argument, the removing defendants submitted copies of insurance policies issued by Travelers that provide a collective $6 million in liability and excess liability coverage. They argued that

---

[10]     Rec. Doc. 21 at 5-7 and the exhibits referenced therein.

[11]     Rec. Doc. 21 at 3-4 and the exhibits referenced therein.

5

"there is no reasonable basis to believe damages will exceed six million dollars as to Albert Quebedeaux."[12]

The doctrine of improper joinder is a narrow exception to the complete diversity requirement.[13] The removal statutes allow a defendant to remove to a federal forum unless an in-state defendant has been properly joined in the suit.[14] To establish improper joinder, the removing defendants must prove either actual fraud in the pleading of jurisdictional facts, or the plaintiff's inability to establish a cause of action against the nondiverse party in state court.[15] Here, there is no allegation of actual fraud. Therefore, the test for improper joinder is

> whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.[16]

---

[12]   Rec. Doc. 21 at 9.

[13]   *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011); *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005).

[14]   *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).

[15]   *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)).

[16]   *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d at 573 (citing *Travis v. Irby*, 326 F.3d at 648).

A defendant contending that a nondiverse party is improperly joined has a heavy burden of proof.[17] The court focus on the joinder, not the merits of the plaintiff's case,[18] and must evaluate the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving contested issues of substantive fact in favor of the plaintiff.[19] The sufficiency of a plaintiff's state-court petition for purposes of the improper joinder analysis is measured under federal pleading standards.[20] Thus, "if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[21] Under that standard, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[22] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] The court must separate legal conclusions from well-pleaded facts,[24] review the

---

[17] *Travis v. Irby*, 326 F.3d at 649.

[18] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d at 573.

[19] *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

[20] *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016).

[21] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d at 573.

[22] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[24] *Ashcroft v. Iqbal*, 556 U.S. at 678-79.

7

well-pleaded factual allegations, assume them to be true, and determine whether they "plausibly give rise to an entitlement of relief."[25]  The court is not required to determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but must only look for a possibility that the plaintiff might do so.[26]

### D. Is There a Reasonable Possibility that the Plaintiff Can Recover Against Progressive?

The removing defendants argued that the plaintiff has no reasonable possibility of recovery against Progressive because the amount of insurance provided by Travelers will exceed any amount of damages ultimately proven by Mr. Quebedeaux thus precluding coverage under Progressive's UM policy.

The removing defendants cited three cases in support of their position.  In *Travis v. Walker*,[27] a judge in the Eastern District of Louisiana found that there was "virtually no possibility that the judgment will exceed the coverage limits" because the defendant had an insurance policy providing $10 million in coverage with another $100 million in excess coverage.  The court found that the plaintiff's UM carrier was improperly joined and concluded that its presence in the suit did not defeat subject-matter jurisdiction.  The opinion is short and contains little analysis.

---

[25]   *Ashcroft v. Iqbal*, 556 U.S. at 679.

[26]   *Guillory v. PPG Industries, Inc.*, 434 F.3d at 309.

[27]   *Travis v. Walker*, No. 91-2571, 1991 WL 174661 at *1 (E.D. La. Aug. 30, 1991).

In *Hunter v. Sirmans*,[28] the plaintiff initially was unwilling to state that the value of her claim exceeded $75,000 and she had "relatively modest injuries." The court concluded that there was no reasonable basis on which to predict that she would recover more than the defendants' $1 million in coverage. Although the defendants did not stipulate to coverage, the court found that "the clear and unmistakable implication of their arguments in their notice of removal and their memorandum in opposition to the motion to remand is that the $1,000,000 policy provides coverage in that amount for the claims alleged. . . and the court deems those submissions a judicial admission of that fact. Defendants will not be able to later deny coverage or assert a lower coverage limit without incurring the risk of substantial sanctions."

In *Montana v. Progressive Gulf Ins. Co.*,[29] the court found that the plaintiffs' injuries had resolved, the damages were known, and the defendants established that the plaintiffs' damages "will not exceed the $997,684.45 remaining on the underlying Progressive combined single limit policy." The court therefore

---

[28] *Hunter v. Sirmans*, No. 08-0043, 2008 WL 4717067, at *3 (W.D. La. Aug. 15, 2008) (distinguished by *Schannette v. United Specialty Ins. Co.*, 6:16-cv-01082, 2016 WL 8453635, at *5 (W.D. La. Dec. 6, 2016), report and recommendation adopted, 2017 WL 889745 (W.D. La. Mar. 1, 2017)).

[29] *Montana v. Progressive Gulf Ins. Co.*, No. 18-9432, 2019 WL 290643 at *3 (E.D. La. Jan. 23, 2019).

concluded that "there is no reasonable scenario under which the plaintiffs could recover general damages in the neighborhood of $300,000.00 each."

In another relevant decision, the court found no reasonable basis on which the plaintiff might recover against his UM carrier when settlement demand letters from the plaintiff's counsel valued the plaintiffs claims at an amount well below the limits of the tortfeasor's liability insurance policy and the liability insurer admitted that it would not assert any coverage issues.[30]

On the other hand, however, this Court located several cases presenting virtually identical fact patterns but reaching a different conclusion, using reasoning that this Court finds to be persuasive. For example, when the tortfeasor's liability insurer issued a policy with a $5 million limit and the plaintiff had documented medical expenses of less than $20,000 and no lost wage claim, but the defendants had not stipulated that they would cover the plaintiff's damages and reserved their coverage defenses, the court found that the defendants had not shown that there was no possibility that the plaintiff could recover from his UM carrier.[31] Similarly, when there was $7 million in liability coverage but no binding stipulation waiving

---

[30] See *Boutin v. United Specialty Ins. Co.*, No. 20-1049, 2020 WL 7488307, at *3 (W.D. La. Dec. 14, 2020), report and recommendation adopted, 2021 WL 67710 (W.D. La. Jan. 7, 2021).

[31] *McFarland v. Protective Insurance Co.*, No. 18-6789, 2019 WL 351150 at *3 (E.D. La. Jan. 29, 2019). See also *Hurst v. Singh*, No. 19-346-BAJ-EWD, 2019 WL 2418751 at *3 (M.D. La. June 7, 2019)

coverage defenses, and the severity and extent of the plaintiff's damages were unknown, the court found that the defendants had not established that there was no reasonable basis to predict that he might recover against his UM carrier and remanded the case.[32]

The facts of this case are similar. Mr. Quebedeaux is still treating for the injuries he allegedly sustained in the accident and may undergo further surgery. Therefore, the value of his damages remains in flux and cannot be accurately quantified at this time. Although the removing defendants argued that there is sufficient underlying liability insurance to cover Mr. Quebedeaux's damages, they did not execute a stipulation in that regard or waive their coverage defenses. Instead, in their answer, they expressly pleaded the conditions and exclusions set forth in their policies.[33] They also argued in their jurisdictional briefing that coverage under the policies might be limited based on the plaintiff's comparative fault. As has been explained in prior cases,

> [The liability insurer] cannot have it both ways. It may not argue on the one hand that plaintiff has no possible claim against [the UM carrier] because the limit of its own policy will clearly cover any damages to plaintiff, while arguing on the other that its policy may not cover plaintiff's claim at all. [The liability insurer] has provided no evidence, other than the limits of its own policy, which is not persuasive, that tends to show that there is no possibility that plaintiff

---

[32] *McLain v. Herrington*, No. 1:19-cv-00454, 2020 WL 1025527 at *12 (W.D. La. Jan. 24, 2020), report and recommendation adopted, 2020 WL 1034377 (W.D. La. Mar. 2, 2020).

[33] Rec. Doc. 7 at 2-3.

11

can recover from [the UM carrier]. If plaintiff is not able to recover from [the liability insurer] for any reason, plaintiff may proceed against . . . plaintiff's uninsured motorist coverage carrier. . . . [T]he removing party[] has not met its burden to show that there is no possibility that plaintiff could recover against [the UM carrier].[34]

Thus, "[b]y denying that its policy covers plaintiff's damages, [the liability insurer] completely undermines its argument that plaintiff cannot possibly state a claim against [his UM insurer]."[35]

This reasoning was applied in a case where the defendants argued that, because the plaintiff's injuries were not catastrophic, it was mathematically impossible for the plaintiff's damages to exceed the $6 million in underlying coverage.[36] The court noted that the liability insurer did not stipulate that its policies undisputedly provided coverage, noted that the liability insurer was not precluded from asserting coverage defenses later in the litigation, and found that it was "plausible that Plaintiff may have a claim against [his UM carrier] to the extent that the aforementioned policies do not cover some or all of his damages because of such policy exclusions or policy coverage provisions."[37] The court found that the

---

[34] *Tureaud v. Kephart*, No. 09-7269, 2010 WL 1254372, at *3 (E.D. La. Mar. 24, 2010).

[35] *Porter v. Loney*, No. 16-00100-JJB-RLB, 2017 WL 2829650 at *2 (M.D. La. June 30, 2017), report and recommendation adopted, 2017 WL 2829650 (June 20, 2017) (quoting *Garner v. Hyken*, No. 10-4135, 2011 WL 1002098, at *4 (E.D. La. Mar. 18, 2011)).

[36] *James v. Brierfield Insurance Company*, No. 17-6931, 2017 WL 6033676, at *4 (E.D. La. Dec. 6, 2017).

[37] *James v. Brierfield Insurance Company*, 2017 WL 6033676, at *4.

12

removing parties had failed to demonstrate that the plaintiff would be unable to recover against its nondiverse UM carrier, and the case was remanded to state court.

This reasoning is equally applicable in this case. The defendants have not stipulated to liability or to insurance coverage. In their jurisdictional briefing, the defendants also argued that "there is either no liability, or at a minimum, a limited percentage of fault, concerning driver Cory Pekarek for the accident."[38] Clearly, then, they did not make a binding representation that the full $6 million in liability insurance is available to Mr. Quebedeaux. Furthermore, the defendants admitted that Travelers issued relevant insurance policies but further stated in their answer to Mr. Quebedeaux's petition that the policy "contains many conditions, exclusions and provisions which limit and define the coverage therein. . . ."[39] If policy provisions exclude coverage for this accident, then the fact that Travelers issued policies having a collective limit of $6 million does not mean that all or any of that money can be recovered by the plaintiff. Thus, the defendants are both arguing that there is a large amount of insurance coverage available but simultaneously suggesting that only some or perhaps none of that insurance can actually be recovered by the plaintiff. Therefore, to the extent that the Travelers policies do not

---

[38] Rec. Doc. 21 at 9.

[39] Rec. Doc. 7 at 2.

cover the plaintiff's damages, the plaintiff may have a plausible claim against Progressive under its UM policy.

Resolving all disputed questions of fact in favor of the plaintiff, this Court finds that the removing defendants have not satisfied the heavy burden of proving that there is no reasonable possibility that Mr. Quebedeaux might ultimately recover from Progressive, his UM carrier. Accordingly, Progressive was not improperly joined, and its citizenship must be considered in the diversity calculus. Because Progressive is not diverse in citizenship from the plaintiff, the court lacks subject-matter jurisdiction, and this matter should be remanded to state court.

E.    **The Plaintiff's Motion to Remand and Mr. Pekarek's Motion to Dismiss**

The plaintiff's pending motion to remand (Rec. Doc. 8) was based on an alleged procedural error rather than on a lack of subject-matter jurisdiction. Having determined that the court lacks subject-matter jurisdiction, it is unnecessary to consider the arguments raised in that motion.

Mr. Pekarek's pending motion to dismiss (Rec. Doc. 11) was grounded on the contention that he was not properly served. Having determined that the court lacks subject-matter jurisdiction, it is unnecessary to consider the arguments raised in that motion.

Absent subject matter jurisdiction, a federal district court can take no action whatsoever.[40] However, once it is established that the court lacks subject-matter jurisdiction, a district court does not err in denying any remaining pending motions as moot.[41] Accordingly, the plaintiff's motion to remand and Mr. Pekarek's motion to dismiss should be denied as moot.

## Conclusion

For the foregoing reasons, this Court finds that the court lacks subject-matter jurisdiction because the parties are not diverse in citizenship and recommends that this case should be REMANDED to the 27th Judicial District Court, St. Landry Parish, Louisiana. It is further recommended that the plaintiff's motion to remand (Rec. Doc. 8) and defendant Cory Pekarek's motion to dismiss for lack of insufficient service of process (Rec. Doc. 11) should be DENIED AS MOOT.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

---

[40] *Mitchell Law Firm, L.P. v. Bessie Jeanne Worthy Revocable Trust*, 8 F.4th 417, 422 (5th Cir. 2021) (citing *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause."). See, also, e.g., *Heaton v. Monogram Credit Card Bank of Georgia*, 231 F.3d 994, 1000 (5th Cir. 2000) (lacking subject-matter jurisdiction, the court could not grant a motion for voluntary dismissal with prejudice); *Williams v. Liberty Mutual Ins. Co.*, No. 04B30768, 2005 WL 776170, at *3 (5th Cir. Apr. 7, 2005) (holding that the court could not rule on a motion for change of venue or a motion for default judgment because it lacked subject-matter jurisdiction).

[41] *Bacani v. Dep't of Veterans Affairs*, 216 F.3d 1080, 1080 (5th Cir. 2000) (per curiam) (unpublished).

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[42]

Signed at Lafayette, Louisiana, this 7th day of March 2022.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[42] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).